LxttletoN, Judge,
delivered the opinion of the court:
The House of Representatives had before it a bill, H. R. 2699, 84th Congress, 1st Session, proposing to pay to the plaintiff $2,594.60 [1] in full settlement of the claims of plain-* tiff against the United States for the payment of certain registration fees[2] to which the plaintiff claimed it was entitled from the Veterans Administration in connection with the education and training of veterans. The bill is set forth in finding 3. The House of Representatives referred the bill to this court pursuant to House Resolution 202, 84th Congress, 1st Session (finding 4). The House Resolution referred H. R. 2699 to the court to make findings of fact and conclusions thereon sufficient to inform Congress “of the nature and character of the demand, as a claim legal or equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the claimant.” Reference was made in the Resolution to sections 1492 and 2509 of Title 28 of the United States Code.
The plaintiff is a nonprofit educational institution approved for the training of veterans under Public Law 16 (Act of March 24,1943, 57 Stat. 43, as amended, 58 Stat. 284, 287-289, 38 U. S. C. chap 12) and Public Law 346 (Act of June 22, 1944, 58 Stat. 284, as amended, 38 U. S. C., chap. 12). Beginning in September 1944, plaintiff began the education and training of veterans under Public Law 346. That law did not require the execution of formal contracts between approved educational institutions and the Veterans Administration and the educational institutions billed the Veterans Administration on the basis of purported “customary *939 charges” for tuition and other fees and were paid, presumably, in accordance with the provisions of Public Law 346 and the Veterans Administration regulations issued pursuant to that law. Public Law 346 provided, among other things, that the Administrator should pay to the educational institution
the customary cost of tuition, and such laboratory, library, health, infirmary, and other similar fees as are customarily charged, and may pay for books, supplies, equipment, and other necessary expenses, exclusive of board, lodging, other living expenses, and travel, as are generally required for the successful pursuit and completion of the course by other students in the institution. [Italics supplied]
The Act authorized the Administrator to promulgate appropriate regulations and pursuant to that authority the Administrator by regulation prescribed certain policies and standards for the payment of fees in connection with the education and training of veterans. One such instruction set forth in finding 10, authorized the payment of fees “customarily made other students” up to $500 for a full-time course in any ordinary school year. The regulation provided that the tuition to be paid should be that customarily charged other students as set forth in the public catalog or bulletin of the school or college and that in the absence of such catalog or bulletin, a responsible official of the educational, institution should certify to the Veterans Administration the customary charges made other students. The regulation also provided that certain incidental fees might be charged in addition to tuition if those fees were in the amount required of all students taking the same or comparable courses, but that “optional fees” not required of other students could not be paid by the Veterans Administration.
The dispute between the plaintiff and the Veterans Administration arose in connection with $25 registration fees billed to and paid by the Veterans Administration and a so-called medical fee in the amount of $30 per pupil also billed to and paid by the Veterans Administration. The period during which these reimbursements were made to the plaintiff was from September 24, 1944, to June 5, 1949, and they total $1,159.33, representing registration fees, and $1,404.49, rep *940 resenting medical fees. It later came to the attention of the Veterans Administration that the $25 registration fee was a fee accompanying the application for admission for the purpose of reserving a room for the student in the dormitory and was thus prohibited as a fee for “lodging.” Moreover,, the official catalog of the plaintiff provided that the fee should be credited on the second-term bill of the student. The Veterans Administration received no credit for such a fee in the case of any students educated under Public Law 346. The medical fee in question was not a fee charged by the educational institution but was a premium which the student was at liberty to pay or not to pay through the educational institution to a private insurance company for the purpose of obtaining health and medical insurance. The medical fee was, of course, optional and did not represent a charge by the educational institution which acted merely as a conduit for the insurance company. In 1949 the Veterans Administration became aware of the nature of the two fees and on September 29, 1949, it advised the plaintiff that the amount of such fees which had been paid to the plaintiff were overpayments and unauthorized under the law and regulations. The total amount of such fees paid in connection with Public Law 346 veterans was recouped by the Veterans Administration by reducing plaintiff’s unpaid vouchers or amounts otherwise due. (Findings 12 and 13.)
The plaintiff appears to concede (in the transcript of testimony) that it has no legal right to recover a judgment in this court for the amount of the fees recouped in connection with Public Law 346 veterans, and hence there remains to be decided only the question of whether or not the plaintiff is “equitably” entitled to recover the amount of those fees. The plaintiff has not filed a brief and did not present any oral argument in this case. We can think of no ground on which the plaintiff might be said to be equitably entitled to be paid the fees in question. The statute and the regulations were a matter of public knowledge at the time the plaintiff was charging the Veterans Administration for these fees and collecting them. It may be that the Veterans Administration officials were somewhat careless in overlooking their error in paying such fees which were clearly not within their *941 power to pay under the statute or the regulations. We do not believe that such carelessness is a basis for an equitable claim on the part of the plaintiff and we cannot recommend to Congress that such amounts be paid to the plaintiff institution.
The plaintiff entered into only one contract under Public Law 16, supra. That statute, which applied only to disabled veterans, required a contract between the educational institution and the Veterans Administration. Plaintiff began the instruction of this student on or about September 15, 1945, under an informal agreement pending the execution of a formal contract. In connection with the preparation of the contract, the Veterans Administration requested the plaintiff to supply it with information regarding its charges for tuition and its incidental fees. As a result of negotiations, a formal contract was executed on March 18, 1946, and in paragraph Second thereof it was provided that the charges listed therein to be paid by the Veterans Administration included a registration fee of $25 and a medical fee of $30. The fifth paragraph of the contract provided as follows:
It is understood and agreed that the charges for services and articles as set forth in paragraph Second hereof are not in excess of the charges generally made to other (regular) students pursuing the same or similar courses of instruction. [Italics supplied.]
The second paragraph of the contract had provided that the fees and charges listed were those stated on page 26 of the plaintiff’s catalog. Page 26 of the plaintiff’s catalog made it quite clear that the registration fee of $25 was for the-purpose of reserving a room in the dormitory and that it would be credited on the student’s second term bill. The Veterans Administration received no credit for this fee in the case of the Public Law 16 veteran. With respect to the medical fee, the contract quite clearly provides that the parties understood the charges to be made to and paid by the Veterans Administration would be only those made to other students. We are of the opinion that this language meant charges made hy the plaintiff and not charged by an insurance company and collected by the plaintiff acting merely as agent for the insurance company.
*942 It is obvious, as plaintiff concedes, that the plaintiff has no legal claim under the Public Law 16 contract. Again, it may be that the Veterans Administration officials responsible for reimbursing plaintiff for the registration and medical fee in connection with this contract acted carelessly, but there is no indication in the record that those officials misrepresented their authority to the plaintiff and the contract itself was clear enough to put the plaintiff on notice that it was not entitled to reimbursement for either fee. We are of the opinion that plaintiff has neither a legal nor an equitable claim against the Government in connection with these fees.
This opinion and the findings of fact, together with our conclusions stated above, will be certified to Congress pursuant to House Resolution 202, 84th Congress, 1st Session.
Laramoee, Judge; Madden, Judge; Whitakee, Judge; and JoNes, Chief Judge, concur.
FINDINGS OE FACT
The court, having considered the evidence, the briefs and argument of counsel, and the report of Trial Commissioner Paul H. McMurray, makes the following findings of fact:
1. Wilbraham Academy, the plaintiff, is a nonprofit, educational institution that has been in existence since 1811; it moved to Wilbraham, Massachusetts in 1825 and has been there since that date. It is chartered through the Commonwealth of Massachusetts. Dr. Charles L. Stevens was Headmaster of the Academy in 1945 when negotiations were begun with the Veterans Administration concerning tuition and registration fees for students who were veterans qualified for benefits under provisions of the applicable laws and regulations.
2. This is a congressional reference case. Plaintiff was, at all times pertinent to this action, an institution approved for the training of veterans under Public Law 16, 78th Congress, enacted March 24, 1948, 57 Stat. 43, 38 U. S. C. A. chapter 12A, Veterans Regulation No. 1 (a), Part VII, p. 720 (1952 Ed.) and Public Law 346, 78th Congress, enacted June 22,1944, 58 Stat. 287, Veterans Regulation 1 (a), Part VIII, 38 IT. S. C. A. chapter 12A, p. 725 (1952 Ed.).
*943 3. On January 20,1955, a bill entitled H. E. 2699,84th Congress, 1st Session, was introduced for the relief of the Wil-braham Academy, which reads in pertinent part as follows:
Be it enacted by the Senate and House of Refresenta-ti/oes of the United States of America in Congress assembled. That the Secretary of the Treasury is authorized and directed to pay, out of any money in the Treasury not otherwise appropriated, to the Wilbraham Academy, Wilbraham, Massachusetts, the sum of $2,-594.60. The payment of such sum shall be in full settlement of all claims of the said Wilbraham Academy against the United States for payment of the registration fees to which the academy was entitled under a Veterans’ Administration contract (file number VT— 39:157) providing for the vocational rehabilitation and educational training of veterans at the academy, but which have been withheld from the academy as a result of a retroactive change made by the Veterans’ Administration in the interpretation of such contract . . .”
' The Bill was referred to the Committee on the Judiciary of the House of Eepresentatives which, on April 4,1955, issued EeportNo. 375 (875), 84th Congress, 1st Session.
4. This case is before the Court of Claims pursuant to House Eesolution 202, 84th Congress, 1st Session, which reads as follows:
Resolved, That the bill (H. E. 2699) entitled “A bill for the relief of Wilbraham Academy”, together with all _ accompanying papers, _ is hereby referred to the United States Court of Claims pursuant to sections 1492 and 2509 of title 28,_ United States Code; and said court shall proceed expeditiously with the same in. accordance with the provisions of said sections and report to the House, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand, as a claim legal or equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the claimant.”
Pursuant to the above Eesolution, plaintiff’s petition herein was filed on July 22,1955.
5. Plaintiff began the instruction of Public Law 16 veterans on or about September 15, 1945 under an agreement which enabled the plaintiff to train such veterans pending *944 the execution of a formal contract. In connection with, the preparation of the contract, under date of February 6,1946, the Veterans Administration requested plaintiff to supply specific information with respect to its charges for tuition, and its registration and medical fees. In response thereto, plaintiff, on February 11, 1946, represented that its annual charges were $600.00 for tuition, $50.00 maximum for books, $25.00 for a registration fee, and $30.00 for a medical fee. Thereupon, the Veterans Administration by letter dated February 20, 1946, directed plaintiff’s attention to the fact .that its catalog indicated that the annual tuition charge for day students was $475.00 and $30.00 for books, and requested copies of minutes showing action by trustees of the school authorizing the increase in charges. On February 23, 1946, plaintiff acknowledged that its previous letter was in error as to the tuition rate and that the correct rate was $475.00 and also stated that the cost of books and other necessary ex- , penses would range between $30.00 and $50.00 per student. However, no statement was made in the letter with respect to the nature of the registration and medical fees, or action by the trustees to increase the tuition rate.
6. On March 18,1946, plaintiff entered into contract VAlr-vr-196 for the period September 15, 1945 to June 30, 1946 to provide vocational rehabilitation for Public Law 16 veterans. The provisions relating to the payment of charges read, in pertinent part, as follows:
SecoND, The courses of instruction to be furnished' and the charges therefor will be as listed and described in this paragraph, or as per publications which are submitted herewith and identified herein and made a part of this proposal. * * *
For description of courses and other essential data see “Wilbraham Academy” catalog. Fees and charges for a non-resident student are stated on page 26, and are as follows:
Yearly tuition-$475. 00
Registration Fee- 25. 00
Medical Fees (Ins. Coverage)- 30.00
Total per year per student- 530. 00
*****
Fifth. It is understood and agreed that the charges for services and articles as set forth in paragraph SEC *945 OND hereof are not in excess of the charges generally made to other (regular) students pursuing the same or similar courses of instruction.
By two renewal agreements, executed by plaintiff and the Veterans Administration, the above contract was continued to June 30,1948.
7. Beginning in September 1944, plaintiff assumed the education and training of Public Law 346 veterans during periods pertinent to this action without formal contracts. Generally at that time Public Law 346 did not require that contracts be entered into between the Veterans Administration and the plaintiff. Educational institutions would bill the Veterans Administration on the basis of the customary charges for tuition and other fees which were the charges paid by non-veteran students enrolled in the same course and the Veterans Administration would make payment of the appropriate charges. Public Law 346 (58 Stat. 284 at 289; 38 U. S. C. A. Chap. 12A, p. 727, 1952 Ed.), Title II, Part VIII, provides in pertinent part as follows:
5 (a) The Administrator shall pay to the educational or training institution (including the institution offering institutional on-farm training), for each person enrolled in full-time or part-time course of education or training, the customary cost of tuition, and such laboratory, library, health, infirmary, and other similar fees as are customarily charged, and may pay for books, supplies, equipment, and other necessary expenses, exclusive of board, lodging, other living expenses, and travel, as are generally required for the successful pursuit and completion of the course by other students in the institution. * * *
However, in connection with the education and training of each Public Law 346 veteran, plaintiff was required to, and did, execute and return to the Veterans Administration a document, VA Form 346-9, designated “Notice of Commencement of Education or Training Under the Provisions of the Servicemen’s Readjustment Act of 1944.” In this document, plaintiff certified its customary charges to be $500 for tuition and $30 for health insurance. Each of the forms was certified by Charles L. Stevens, Headmaster of the School, and contained a statement that the student had *946 agreed to pay the balance of expenses not covered by Public Law 346.
8. The terms “medical fees” and “health fees” appearing in the testimony and exhibits relate to payments for health and accident policies issued by an insurance company to individual students.
In August 1949, the preparation of a contract between plaintiff and the Veterans Administration was under consideration and, at the direction of the Veterans Administration Central Office, in Washington, D. C., the Boston Begional Office of the Veterans Administration requested plaintiff to state whether or not the insurance premium was a customary fee payable by all day students. Under date of August 29, 1949, plaintiff informed the Veterans Administration that the payment of such premium was optional and not required to be paid by students.
9. The catalog of the plaintiff school-in effect during all periods pertinent to this action, contains, at page 26 thereof,, the following statements:
TUITION AND EXPENSES
Because of its generous endowment, the Academy is able to offer distinct educational advantages at a cost several hundred dollars lower than would otherwise be possible.
The inclusive fee for board, tuition, room, infirmary,, laundry of bed linen, most of the athletic equipment,, and weekend entertainment, is $1,100 for the year. The annual tuition charge for day students is $475. Half is payable at the opening of school in September and half on February 1. There is no rebate for boys who drop out in the middle of the term, since the school must make its arrangements for the whole year in advance.
The registration fee of $25, which accompanies the application for admission, reserves a room in the dormitory, and is credited on the second term bill. This fee is returned if the candidate is not admitted or if notice of withdrawal is received before August 1.
10.The Servicemen’s Readjustment Act of 1944 also authorized the Administrator of Veterans Affairs to promulgate regulations. Paragraph 9 thereof reads, in part, as follows:
*947 9. * * * Consistent with and subject to the provisions and limitations set forth in this part, the Administrator shall, from time to time, prescribe and promulgate such rules and regulations as may be necessary to carry out its purposes and provisions. (38 U. S. C. A.. Chapter 12A, p. 729,1952 Ed.)
Pursuant to the provisions of this Act, the Administrator,, by regulations, prescribed certain policies and administrative standards for the payment of fees in connection with the-education and training of veterans. The original regulations and operating instructions of the Veterans Administration covering payment of tuition and fees for the education and training of veterans under Public Law 346, are contained in Veteran Administration Instruction No. 6, Title II, Public Law 346, 78th Congress, dated April 17,1945,, 10 F. R. 4502; 38 C. F. R. 36.245, p. 3938 et seq. (1945 Supp.). Under the statute and the regulations the appropriate Veterans Administration official was authorized to make payment for tuition and incidental fees, in connection with the education of veterans, in the amount which the school required non-veteran students to pay for the same course,' subject to certain limitations as to amount, not relevant here.
Paragraph 1 of Instruction No.- 6, reads as follows:
1. Authorization for Payment of Tuition, Incidental Fees, and Books, /Supplies, Equipment and other Expenses. The manager of the regional office of the Veterans Administration is authorized to pay to the educational or training institution for each eligible person, enrolled in a full-time or a part-time course of education or training such charges for tuition, incidental fees,, necessary books, supplies, equipment, and other expenses as are customarily made other students pursuing-the same or comparable courses except as otherwise-stated in this instruction, and provided that such payment shall not exceed $500 for a full-time course for an ordinary school year.
Instruction No. 6, in paragraph 2, required that payment for the training of Public Law 346 veterans be made by the-Veterans Administration at the customary rate of tuition and fees charged non-veterans and defined the nature of such charges. Paragraph 2 (A) provides as follows with respect to tuition:
*948 (A) Charges for tuition will he those customarily made other students pursuing tbe same or comparable courses, as set forth in the published catalogs or bulletins of the school or college, except as otherwise stated herein. In the event an institution does not publish a bulletin, a responsible official of the institution will individually certify to the manager of the regional office within whose territory the institution is located the customary charges for tuition for the courses offered.
Paragraph 2 (B) prohibits the payment of optional fees, but permits certain fees to be paid by the Government provided that such fees are required to be paid by all students in the same course, as follows:
(B) Incidental fees, including laboratory, library, health, infirmary, registration, matriculation, breakage, student body and similar fees, may be charged in addition to tuition in the amount required of all students taking the same or comparable courses. Individual charges, such as library fines and charges for library books lost, and optional fees not required of all other students are not allowable.
Paragraph 2 (D) limits the amount to be paid by the Government to the lowest charge made by the school, as follows:
(D) When more than one standard charge is made for the same service, the Veterans Administration will pay the lowest price for the entire course, semester, quarter or term which is offered or published.
Paragraph 3 provides that payments for tuition and fees will be made in arrears only and subparagraph (B) (B) directs that no payments for refundable deposits will be made and reads as follows :
(3) Breakage fees and deposits, all or part of which are normally refundable, will be allowed for only the amount of breakage or loss actually incurred in connection with the courses and the actual amount of breakage or loss will be stated on the voucher. Items broken or lost will be treated as supplies furnished.
11. On April 15, 1947, the Veterans Administration collected its various regulations into a volume known as VA Manual M7-5. The provisions of Instruction No. 6 were, in substance, incorporated in the Manual. Chapter 5 of VA Manual M7-5 in paragraph 76 (a) prohibits the payment of *949 -refundable deposits but does permit payment of incidental .fees if all students are required to pay them, as follows: <38 C. F. E. 21.518.):
a. Incidental fees. Fees incidental to tuition and required of all students taking the same or comparable courses are payable by the YA. Such fees include matriculation fee, registration fee, laboratory fee, library fee, health and/or infirmary fee, student body or student activity fee, if required of all students. A fee for repeating a subject of a course would be allowable if it is required of all students who repeat a course.
Note : Library fines, or penalty fees, are not incidental fees payable by the YA. Deposits, all or part of which are normally refundable, are not incidental fees and are not payable by the YA as such. (See par. '76c.)
"These regulations relating to payment of fees remained in •effect during the period pertinent to this case and appear in ■the 1949 edition of 38 C. F. B., Sections 21.470-21.472; ■21.485; 21.517 and 21.518.
12. Plaintiff, during the period September 24, 1944 to .June 5, 1949, charged and received payment from the Veterans Administration of $1,159.33 for registration fees and '$1,404.49 for insurance premiums on behalf of veteran students enrolled in its school. A witness on behalf of plaintiff admitted that plaintiff did not credit the Government for any of the registration fees paid by the Veterans Administration for the account of veteran students. The Veterans Administration, questioning the propriety of fee payments made to the school, made a review of all such payments to plaintiff for registration fees and insurance premiums since 1945, which totalled $2,563.82 and advised plaintiff on September 29, 1949 that an overpayment in that amount had been made for the reason that the payments were unauthorized under Veterans Administration regulations. In connection therewith, plaintiff was supplied with a detailed •schedule showing the overpayments made for each veteran •enrollee, was requested to refund the amount thereof, and was advised that if it failed to make the refund, a deduction 'to cover the amount of overpayment would be made from «current unpaid vouchers. Of the amount recovered by the Veterans Administration, $2,523.83 related to Public Law 346 *950 payment, and $40 relates to payments made on behalf of one Public Law 16 veteran. The Public Law 16 student involved is Albert Korylak.
13. Plaintiff did not make a refund but submitted the question of the Government’s liability for the registration and medical fees to the Comptroller General. By decision dated June 8, 1950 (B-89500), the Comptroller General held that there was no action which could properly be taken by his. office. This decision reads, in part, as follows:
It seems evident that * * * the medical fee in question — not being a fee required to be paid by all students — would not constitute an allowable fee. It seems» equally evident that the registration fee involved— credit for which is allowed to the student on charges for the second term — is in the nature of a deposit and hence, not an allowable fee. * * *
Thereafter, on May 16, 1950, the Veterans Administration recovered the overpayments by reducing plaintiff’s unpaid, vouchers by $2,563.82.
14. It is noted that the Bill, H. R. 2699, 84th Congress, 1st". Session, which has been referred to this Court, refers only to» registration fees payable under a Veterans Administration, contract. However, the amount set forth in the Bill except. for $30.78 is the amount recouped by the Veterans Administration as overpayments made for both registration and insurance fees. The record indicates that payments of substantially all such fees by the Government were made on be- - half of Public Law 346 veterans pursuant to the statute and. not under a formal contract. The difference between the», amount stated in the Bill, $2,594.60 and the amount recouped by the Veterans Administration, $2,563.82, represents a de- • duction of $30.78 made to vouchers submitted by plaintiff in order to adjust the tuition charge to the correct date of enrollment in the case of one veteran student. Plaintiff has^ not objected to this adjustment. It therefore seems fairly obvious that the Bill was intended to encompass the amount • of the medical fees as well as the registration fees whether or ■ not due under a formal contract.
15. The reimbursable nature of the registration fee remained in effect for the entire period, 1944 to June 5, 1949, for which overpayments were recovered by the Veterans Ad— *951 ministration. However, by action of the trustees, effective .'September 1949, the school changed its policy and required the registration fee to be paid by all applicants as a nonreturnable fee. Plaintiff notified the Veterans Administration of its change of policy by letter dated March 24, 1950, ■’which reads, in part, as follows:
4. Our registration fee, also certified by the Board of Collegiate Authority, is twenty-five dollars ($25), which is paid by every applicant for admission. This is a fee in and of itself, and is not credited to either tuition, board and room, or any other annual charge. This is a definite change in policy which became effective in September 1949.
16- It appears from the record that during the period cov•ered by this claim the registration fee was a deposit only and that all students were entitled to a credit on their second term tuition bill to the amount paid as a registration fee; "that plaintiff never gave the Government credit for such ■payments on the tuition bills submitted for veteran en-rollees; and that the so-called medical fee was, in fact, a premium payment for a health and accident policy issued to •students by an insurance company who received payment from the plaintiff; and that it was not a payment required •of non-veteran students but was optional depending on whether or not a particular student desired to have the insurance coverage. According to testimony of the Head Master of plaintiff’s school, the school acted in the capacity •of a collection agent for the insurance company and paid directly to such company the money received from students for medical fees.
17. The evidence establishes that (1) the school could have been paid total tuition of $500.00 per student if binding agreements had been negotiated or if the school authorities had taken appropriate action to increase the tuition from “$475.00 to $500.00 in 1946 before a contract was signed covering Public Law 16 students or an agreement reached with respect to Public Law 846 students; (2) during preliminary negotiations between Headmaster Stevens of the school and ■a contract officer of the Veterans Administration, it was understood by Mr. Stevens and clearly indicated by the contract officer that the school would be paid the $500.00 rate; *952 (3) when the contract was prepared in writing the yearly tuition rate was stated to be $475.00 and the registration fee-listed as $25.00 with no statement to indicate that the $25.00' was included in the $475.00 in accordance with the prior policy relating to resident students; (4) the tuition rate of $475.00 did not cover the cost per student to the school but had been previously established as an inducement to local residents to attend the school; and (5) the official change of policy to make the registration fee payable in addition to the-tuition fee came in September 1949 whereas the period' covered by this claim ended on June 5, 1949.

 The difference between the amount stated in the Bill ($2594.60), which the plaintiff seeks, and the amount recouped by the Veterans Administration ($2563.82) represents an administrative adjustment of $30.78 made to vouchers to correct the billing for tuition, to which the plaintiff has not objected (finding 14).

 The Bill, H. R. 2699, refers only to registration fees payable under a Veterans Administration contract. However, the amount set forth in the Bill except for $30.78, referred to in footnote 1 above, is the amount recouped by the Veterans Administration as overpayments made for both registration and insurance fees.